UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LARRY PORTAL, et al.,<br><br>*Plaintiff,*<br><br>v.<br><br>SETH LEVINE, et al.,<br><br>*Defendants.* | Civil Action No. 19-19611<br><br>ORDER |

**THIS MATTER** comes before the Court by way of Plaintiffs Larry Portal ("Portal"), Frank Maiorano ("Maiorano"), Gracy Weberman ("Weberman"), Jahn Brodwin ("Brodwin"), Donald J. Noone II ("Noone"), Martin Goldstein ("Goldstein"), and David Metzman's ("Metzman" and collectively with Portal, Maiorano, Weberman, Brodwin, Noone, and Goldstein, "Plaintiffs") unopposed Motion for Default Judgment,[1] ECF No. 55, against Defendants Seth Levine ("Levine"), Teaneck Plaza Ventures LLC ("Teaneck LLC"), 2680 Kennedy Ventures ("Kennedy Ventures"), Englewood Funding, LLC ("Englewood Funding LLC"), Hillside Norse LLC ("Hillside LLC"), PA Norse LLC ("PA LLC"), 2817 Palisades Venture, LLC ("Palisades LLC"), Clifton DL Ventures LLC ("Clifton LLC"), Sussex Norse LLC, 4318 Kennedy Partners, LLC ("Kennedy Partners LLC"), Lenox South Park, LLC ("South Park LLC"), Lenox McKinley, LLC ("McKinley LLC"), Post Avenue Ventures, LLC ("Post Avenue LLC"), Plainfield Norse, LLC ("Plainfield LLC"), 219 Hillside Ventures LLC ("Hillside Ventures LLC"), Bayonne Ventures, LLC ("Bayonne LLC"), Jordan Ventures LLC ("Jordan LLC"), Orange LP Ventures, LLC ("Orange LLC"), Plainfield PA Ventures ("Plainfield Ventures"), Passaic Main Norse LLC

---

[1] In deciding a motion for default judgment, "the factual allegations in a complaint, other than those as to damages, are treated as conceded by [the] defendant." DIRECTV, Inc. v. Pepe, 431 F.3d 162, 165 (3d Cir. 2005).

("Passaic LLC), Perth NB Ventures LLC ("Perth NB LLC"), Sussex Ventures LLC, Perth LP Ventures, LLC ("Perth LP LLC"), Clifton 126 Center LLC ("Clifton Center LLC"), and Englewood Norse, LLC ("Englewood Norse LLC") (collectively, "Defendants");

and it appearing that this action arises out of an alleged scheme to defraud real estate investors perpetrated by Defendants, see generally Compl., ECF No. 1;

and it appearing that Levine solicited Plaintiffs to invest in real property through a series of LLCs formed by Levine (the "Defendant LLCs"), id. ¶¶ 37, 41, 45, 49, 53, 57, 61, 65, 69, 73, 77, 81, 85, 89, 93, 97, 101, 105, 107, 111, 115, 117, 120, 123;

and it appearing that Levine served as the managing member for each Defendant LLC, id. ¶ 175;

and it appearing that Portal invested (1) $192,500 in Kennedy Ventures, which purchased property in Jersey City, New Jersey in February 2012, id. ¶¶ 37-39; (2) $215,000 in Englewood Funding LLC, which purchased property in Englewood, New Jersey in 2103, id. ¶¶ 41-43; (3) $65,000 in Hillside LLC, which purchased property in Hillside, New Jersey in May 2013, id. ¶¶ 45-47; (4) $95,000 in PA LLC, which purchased property in Perth Amboy, New Jersey in May 2013, id. ¶¶ 49-51; (5) $70,000 in Palisades LLC, which purchased property in Union City, New Jersey in February 2014, id. ¶¶ 53-55; (6) $100,000 in Clifton LLC, which purchased property in Clifton, New Jersey in June 2014, id. ¶¶ 57-59; (7) $95,000 in Sussex Norse LLC, which purchased property in Bayonne, New Jersey in June 2014, id. ¶¶ 61-63; (8) $207,500 in Teaneck LLC, which purchased property in Teaneck, New Jersey in November 2015, id. ¶¶ 65-67; (9) $100,000 in Kennedy Partners LLC, which purchased property in Union City in December 2014, id. ¶¶ 69-71; (10) $62,500 in South Park LLC, which purchased property in Hackensack, New Jersey in March 2015, id. ¶¶ 73-75; (11) $62,500 in McKinley LLC, which purchased property in Hackensack in

March 2015, id. ¶¶ 77-79; (12) $160,000 in Sussex Ventures LLC, which purchased property in Bayonne in May 2015, id. ¶¶ 81-83; (13) $62,500 in Englewood Norse LLC, which purchased property in Bayonne in August 2015, id. ¶¶ 85-87; (14) $60,000 in Post Avenue LLC, which purchased property in Passaic, New Jersey in November 2015, id. ¶¶ 89-91; (15) $73,000 in Plainfield LLC, which purchased property in Perth Amboy in January 2016, id. ¶¶ 93-95; (16) $137,500 in Hillside Ventures LLC, which purchased property in Hillside in March 2016, id. ¶¶ 97-99; (17) $125,000 in Bayonne LLC, which purchased property in Bayonne in February 2016, id. ¶¶ 101-03; (18) $53,437.50 in Jordan LLC, id. ¶¶ 105-06; (18) $80,000 in Orange LLC, which purchased property in West Orange, New Jersey in September 2017, id. ¶¶ 107-09; (19) $135,000 in Plainfield Ventures, which purchased property in Perth Amboy in September 2017, id. ¶¶ 111-13; (20) $60,000 in Passaic LLC, id. ¶¶ 115-16; (21) $99,750 in Perth NB LLC, id. ¶¶ 117-18; and (22) $140,000 in Perth LP LLC, id. ¶¶ 120-21;

and it appearing that Maiorano invested (1) $27,500 in Kennedy Ventures, which purchased property in Jersey City in February 2012, id. ¶¶ 37-39; (2) $50,000 in Englewood Funding LLC, which purchased property in Englewood in 2103, id. ¶¶ 41-43; (3) $15,000 in Hillside LLC, which purchased property in Hillside in May 2013, id. ¶¶ 45-47; (4) $45,000 in PA LLC, which purchased property in Perth Amboy in May 2013, id. ¶¶ 49-51; (5) $35,000 in Palisades LLC, which purchased property in Union City in February 2014, id. ¶¶ 53-55; (6) $30,000 in Sussex Norse LLC, which purchased property in Bayonne in June 2014, id. ¶¶ 61-63; and (7) $41,500 in Teaneck LLC, which purchased property in Teaneck in November 2015, id. ¶¶ 65-67;

and it appearing that Weberman invested (1) $35,000 in Englewood Funding LLC, which purchased property in Englewood in 2103, id. ¶¶ 41-43; (2) $30,000 in Hillside LLC, which

3

purchased property in Hillside in May 2013, id. ¶¶ 45-47; (3) $10,000 in PA LLC, which purchased property in Perth Amboy in May 2013, id. ¶¶ 49-51; (4) $35,000 in Palisades LLC, which purchased property in Union City in February 2014, id. ¶¶ 53-55; (5) $67,500 in Clifton LLC, which purchased property in Clifton in June 2014, id. ¶¶ 57-59; (6) $25,000 in Sussex Norse LLC, which purchased property in Bayonne in June 2014, id. ¶¶ 61-63; (7) $41,500 in Teaneck LLC, which purchased property in Teaneck in November 2015, id. ¶¶ 65-67; (8) $60,000 in Orange LLC, which purchased property in West Orange in September 2017, id. ¶¶ 107-09; (9) $60,000 in Plainfield Ventures, which purchased property in Perth Amboy in September 2017, id. ¶¶ 111-13; and (10) $70,000 in Perth LP LLC, id. ¶¶ 120-21;

and it appearing that Brodwin invested (1) $100,000 in Englewood Funding LLC, which purchased property in Englewood in 2013, id. ¶¶ 41-43; (2) $25,000 in Hillside LLC, which purchased property in Hillside in May 2013, id. ¶¶ 45-47; (3) $35,000 in Clifton LLC, which purchased property in Clifton in June 2014, id. ¶¶ 57-59; (4) $25,000 in Sussex Norse LLC, which purchased property in Bayonne in June 2014, id. ¶¶ 61-63; (5) $41,500 in Teaneck LLC, which purchased property in Teaneck in November 2015, id. ¶¶ 65-67; (6) $12,500 in South Park LLC, which purchased property in Hackensack in March 2015, id. ¶¶ 73-75; and (7) $12,500 in McKinley LLC, which purchased property in Hackensack in March 2015, id. ¶¶ 77-79;

and it appearing that Noone invested (1) $100,000 in Englewood Funding LLC, which purchased property in Englewood in 2103, id. ¶¶ 41-43; (2) $35,000 in Hillside LLC, which purchased property in Hillside in May 2013, id. ¶¶ 45-47; (3) $35,000 in Palisades LLC, which purchased property in Union City in February 2014, id. ¶¶ 53-55; (4) $35,000 in Clifton LLC, which purchased property in Clifton in June 2014, id. ¶¶ 57-59; (5) $25,000 in Sussex Norse LLC, which purchased property in Bayonne in June 2014, id. ¶¶ 61-63; (6) $83,000 in Teaneck LLC,

which purchased property in Teaneck in November 2015, id. ¶¶ 65-67; (7) $65,000 in Kennedy Partners LLC, which purchased property in Union City in December 2014, id. ¶¶ 69-71; (8) $12,500 in South Park LLC, which purchased property in Hackensack in March 2015, id. ¶¶ 73-75; and (9) $12,500 in McKinley LLC, which purchased property in Hackensack in March 2015, id. ¶¶ 77-79;

and it appearing that Goldstein invested (1) $43,750 in South Park LLC, which purchased property in Hackensack in March 2015, id. ¶¶ 73-75; (2) $43,750 in McKinley LLC, which purchased property in Hackensack in March 2015, id. ¶¶ 77-79; (3) $160,000 in Sussex Ventures LLC, which purchased property in Bayonne in May 2015, id. ¶¶ 81-83; (4) $62,500 in Englewood Norse LLC, which purchased property in Bayonne in August 2015, id. ¶¶ 85-87; (5) $60,000 in Post Avenue LLC, which purchased property in Passaic in November 2015, id. ¶¶ 89-91; (6) $73,000 in Plainfield LLC, which purchased property in Perth Amboy in January 2016, id. ¶¶ 93-95; (7) $206,250 in Hillside Ventures LLC, which purchased property in Hillside in March 2016, id. ¶¶ 97-99; and (8) $125,000 in Bayonne LLC, which purchased property in Bayonne in February 2016, id. ¶¶ 101-03;

and it appearing that Metzman invested (1) $100,000 in Perth NB LLC, id. ¶¶ 117-18; and (2) $100,000 in Clifton Center LLC, which purchased property in Clifton in February 2019, id. ¶¶ 123-25;

and it appearing that Portal and Weberman invested an additional $306,000 to be used to invest in a portfolio of four properties in Perth Amboy, id. ¶¶ 127, 145;

and it appearing that the portfolio never closed and the money was allegedly never invested, id.;

5

and it appearing that Kennedy Ventures, Englewood Funding LLC, Hillside LLC, PA LLC, Palisades LLC, Clifton LLC, Sussex Norse LLC, Teaneck LLC, Kennedy Partners LLC, South Park LLC, McKinley LLC, Sussex Ventures LLC, Englewood Norse LLC, Post Avenue LLC, Plainfield LLC, Hillside Ventures LLC, Bayonne LLC, Orange LLC, and Plainfield Ventures, were each governed by an operating agreement prepared by Levine (the "Operating Agreements"), id. ¶¶ 40, 44, 48, 52, 56, 60, 64, 68, 72, 76, 80, 84, 88, 92, 96, 100, 104, 110, 114, all of which allegedly provided, inter alia, that (a) Defendants were required to maintain and manage the subject properties (the "Properties"), id. ¶ 191; and (b) Plaintiffs were to receive certain distributions from each LLC, id. ¶ 139;[2]

and it appearing that Plaintiffs allege that Defendants have failed to make certain distributions required by the Operating Agreements, id. ¶ 139;

and it appearing that as of approximately August 22, 2019, Defendants have abandoned their obligation to manage the Properties, have ceased making insurance payments related to the Properties, and have defaulted on several loans related to the Properties, id. ¶¶ 129-31, 133;

and it appearing that on October 31, 2019, Plaintiffs filed the nine-count Complaint alleging (1) a violation of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"), id. ¶¶ 146-54 ("Count I"); (2) conspiracy to violate RICO, id. ¶¶ 155-61 ("Count II"); (3) equitable accounting, id. ¶¶ 162-67 ("Count III"); (4) fraud, id. ¶¶ 168-73 ("Count IV"); (5) breach of fiduciary duty against Levine, id. ¶¶ 174-79 ("Count V"); (6) conversion, id. ¶¶ 180-84 ("Count VI"); (7) unjust enrichment, id. ¶¶ 185-88 ("Count VII"); (8) breach of contract, id. ¶¶ 189-98 ("Count VIII"); and (9) appointment of receiver, id. ¶¶ 199-201 ("Count IX");

---

[2] The Complaint does not allege that Levine provided an Operating Agreement for Jordan LLC and Passaic LLC.  The Complaint states that Levine did not provide an Operating Agreement for Perth NB LLC, Perth LP LLC, and Clifton Center LLC, id. ¶¶ 119, 122, 125.

6

and it appearing that as of the date of this Order, Defendants have failed to answer or otherwise respond to the Complaint;

and it appearing that on February 28, 2020, the Clerk of Court entered default against Defendants;

and it appearing that before entering a default judgment, the Court must determine whether it has jurisdiction over the action and the parties, see Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp., 596 F. Supp. 2d 842, 848 (D.N.J. 2008), and whether Plaintiff properly served Defendants, see E.A. Sween Co., Inc. v. Deli Express of Tenafly, LLC, 19 F. Supp. 3d 560, 567 (D.N.J. 2014);

and it appearing that the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367 because the Complaint alleges a violation of RICO;

and it appearing that the Court has personal jurisdiction over Defendants because all Defendants are domiciled, organized, or have their principal place of business in New Jersey, Compl. ¶¶ 8-32; see also Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011);

and it appearing that venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1);

and it appearing that Defendants have acknowledged service of the Summons and Complaint, see ECF No. 14;

and it appearing that before entering a default judgment, a court must also determine whether the plaintiff's complaint sufficiently pleads a cause of action and whether the plaintiff has proved damages, Chanel, Inc. v. Gordashevsky, 558 F. Supp. 2d 532, 536, 538 (D.N.J. 2008);

and it appearing that Plaintiffs now move for default judgment on, inter alia, Counts IV (fraud), VI (conversion), and VIII (breach of contract), Pl. Mem. at 1, ECF No. 55.1;

and it appearing that Count IV alleges that Defendants defrauded Plaintiffs by inducing them to make investments in reliance on material "misrepresentations and/or omissions," Compl. ¶¶ 169-73;

and it appearing that "[t]he elements of common-law fraud are (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages," Allstate N.J. Ins. Co. v. Lajara, 222 N.J. 129, 147 (2015) (citation and quotation marks omitted);[3]

and it appearing that while Plaintiffs do not clearly indicate which misrepresentations or omissions form the basis of their fraud claim, the Complaint alleges that Defendants defrauded Plaintiffs by failing to make distributions, as promised in the Operating Agreements, Compl. ¶ 139;

and it appearing that New Jersey's economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract," Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co., 226 F. Supp. 2d 557, 562 (D.N.J. 2002) (citing Duquesne Light Co. v. Westinghouse Elec. Co., 66 F.3d 604, 618 (3d Cir. 1995)); see also id. at 546 (explaining that the "critical issue" in determining whether a tort claim may proceed alongside a contract claim is "whether the allegedly tortious conduct is extraneous to the contract");

and it appearing that the economic loss doctrine bars Count IV because Plaintiffs' fraud claim arises solely from Levine's alleged failure to honor his contractual promises to make

---

[3] Federal Rule of Civil of Procedure 9(b) requires fraud claims to be pled with particularity. A plaintiff must specify "the date, place or time of the fraud," "who made a misrepresentation to whom," and "the general content of the misrepresentation," Holst v. Oxman, 290 F. App'x 508, 510 (3d Cir. 2008) (citation and quotation marks omitted).

8

distributions, see, e.g., id. at 564 (holding that the economic loss doctrine prohibits fraud claims based on the breach of a contractual promise or fraud in the performance of a contract);[4]

and it appearing that Count VI alleges that Defendants converted funds received from Plaintiffs that were "earmarked to fund the purchase of specific properties," id. ¶¶ 180-84;

and it appearing that to state a claim for common law conversion, a plaintiff must allege "(1) the existence of property, (2) the right to immediate possession thereof belonging to [the] plaintiff, and (3) the wrongful interference with that right by [the] defendant," Austar Int'l Ltd. v. AustarPharma LLC, 425 F. Supp. 3d 336, 357 (D.N.J. 2019) (citation and quotation marks omitted);

and it appearing that the Complaint alleges that (1) Portal and Weberman invested $306,000 to be used to invest in a portfolio of four properties in Perth Amboy, Compl. ¶¶ 127, 145; and (2) the portfolio never closed and the money was allegedly never invested, id.;

and it appearing that drawing all inferences in favor of Plaintiffs, Count VI adequately pleads a conversion claim by Portal and Weberman against Levine,[5] see, e.g., E. Concrete Materials, Inc. v. Jamer Materials Ltd., No. 19-9032, 2019 WL 6734511, at *8 (D.N.J. Oct. 25, 2019), report and recommendation adopted, 2019 WL 6726476 (D.N.J. Dec. 10, 2019) (holding that plaintiff adequately pled conversion claim where (1) plaintiff paid defendant for the purchase of property, and was therefore entitled to that property; and (2) defendant sold the property to a

---

[4] The Complaint fails to specifically plead any other actionable misrepresentations. For example, while Plaintiffs allege that Levine "claimed" that he invested in the Defendant LLCs, e.g., Compl. ¶¶ 38, 42, 46, Plaintiffs do not allege that these claims were false or that they induced Plaintiffs to invest. Similarly, while Plaintiffs allege that they invested in some properties and were never informed who else invested or that it was "unclear" whether Levine invested the money or property was acquired, Plaintiffs fail to allege with specificity what the fraudulent activity was or that they were falsely induced in some way, see, e.g., id. ¶¶ 106, 116, 119. To the extent Plaintiffs seek to assert a fraud claim based on representations in the Operating Agreements related to the management of the LLCs, such claims are similarly barred by the economic loss doctrine.

[5] The Court does not find that the Complaint adequately alleges conversion with respect to those investments where Plaintiffs claim that they are "unsure" or "unclear" about whether property was acquired following investments. See Compl. ¶¶ 106, 116, 119, 122.

9

third party without plaintiff's knowledge, thereby, "exerting ownership rights over plaintiff's property and interfering with plaintiff's right of possession");[6]

and it appearing that Count VIII alleges that Defendants breached the Operating Agreements by failing to manage the Properties or pay distributions to Plaintiffs, Compl. ¶¶ 189-98;

and it appearing that to state a claim for breach of contract, a plaintiff must allege (1) "a valid contract between the parties," (2) "the opposing party's failure to perform a defined obligation under the contract," and (3) "the breach caused the claimant to sustain[] damages," EnviroFinance Grp., LLC v. Env't Barrier Co., LLC, 440 N.J. Super. 325, 345 (App. Div. 2015) (citation omitted);

and it appearing that Plaintiffs allege that (1) the Operating Agreements were valid contracts between Plaintiffs and Levine, Compl. ¶ 190;[7] (2) the Operating Agreements required Levine, as managing member of each LLC, to (a) maintain and manage the Properties, id. ¶¶ 191-92, and (b) make undisclosed distributions to Plaintiff, id. ¶ 139; and (3) Levine breached the Operating Agreements and caused damage to Plaintiffs by failing to manage the Properties or make distributions, id. ¶¶ 129-33, 139, 194-96;

---

[6] Unlike Plaintiffs' fraud claim, which flows solely from the breach of contractual promises, the Court is satisfied that Levine's alleged misappropriation breached independent tort duties to act in the best interests of Plaintiffs and to refrain from interfering with their right to possession of property. See, e.g., Hughes v. TD Bank, N.A., 856 F. Supp. 2d 673 (D.N.J. 2012) (permitting conversion claim to proceed where bank misappropriated funds to which plaintiff was entitled "in ways not contemplated by the [parties'] contract"); E. Concrete Materials, Inc., 2019 WL 6734511, at *8 (holding that plaintiff stated independent conversion claim by alleging that defendant sold a third party materials that it was contractually obligated to provide to plaintiff and retained the proceeds). In other words, Levine both failed to direct funds in accordance with the parties' contract and, by misappropriating the funds, he ensured that they could not be used for their proper purpose.

[7] The Complaint does not adequately allege that the Defendant LLCs were parties to the Operating Agreements. Plaintiffs' well-pled allegations indicate only that for each LLC, "Levine prepared and circulated an Operating Agreement . . . which was duly executed by its members." See Compl. ¶¶ 40, 44, 48, 52, 56, 60, 64, 68, 72, 76, 80, 84, 88, 92, 96, 100, 104, 110, 114.

and it appearing that Count VIII therefore sufficiently pleads a claim for breach of the Operating Agreements;[8]

and it appearing that although the Court accepts the facts pled in the Complaint "as true for the purpose of determining liability, the plaintiff must prove damages," Moroccanoil, Inc. v. JMG Freight Grp. LLC, No. 14-5608, 2015 WL 6673839, at *2 (D.N.J. Oct. 30, 2015);

and it appearing that Plaintiffs seek default judgment in the amount of $4.5 million, see Pl.'s Mem. at 21, ECF No. 55.1;

and it appearing that Plaintiff Portal has submitted a declaration in support of the Motion, see ECF No. 55.3 ("Portal Decl.");[9]

and it appearing that Plaintiffs seek damages arising from Levine's failure to manage the Properties or make distributions, but Plaintiffs have not quantified the distributions owed under the Operating Agreements[10] or explained how Levine's failure to manage the Properties damaged Plaintiffs;

and it appearing that Plaintiffs received undisclosed payments from Defendants and Plaintiffs concede that "those amounts will be deducted from Plaintiff's ultimate award of damages," Compl. ¶ 142;

---

[8] Plaintiff also moves for default judgment on Count V (breach of fiduciary duty), which is asserted solely against Levine. Because Plaintiffs have stated a claim for breach of contract against Levine and seek identical relief for Counts V and VIII, the Court need not determine whether Plaintiffs have adequately stated a claim for breach of fiduciary duty.

[9] Portal's declaration appears to simply be a carbon copy of the factual allegations in the Complaint. It includes many statements that discuss the conduct of co-Plaintiffs without any indication of how Portal became aware of such conduct. The Court will credit only those statements that plausibly fall within Portal's personal knowledge. Plaintiffs are instructed that any renewed motion for default judgment must be accompanied by declarations or other proof demonstrating the specific facts supporting each Plaintiff's individual claim to damages.

[10] Nowhere does Portal specify the distributions owed under the Operating Agreements to himself or his co-Plaintiffs, and Plaintiffs have not submitted the Operating Agreements themselves.

and it appearing that Plaintiffs have not provided the dollar amount they each received, rendering the Court unable to calculate a damages award;

and it appearing that Plaintiffs have therefore failed to satisfy their burden to prove damages, see, e.g., Gen. Elec. Cap. Corp. v. Automated Digital Consultants, Inc., No. 15-1682, 2016 WL 756559, at *2 (D.N.J. Feb. 25, 2016) ("[T]he Court cannot determine the accuracy of the claimed damages amount with any reasonable certainty, and therefore is not satisfied that default judgment is appropriate.");

**IT IS** on this 26th day of October, 2021,

**ORDERED** that Plaintiffs' Motion for Default Judgment, ECF No. 55, is **DENIED WITHOUT PREJUDICE**; and it is further

**ORDERED** that Plaintiffs may file a renewed motion for default judgment providing proof of damages within thirty (30) days of this Order.

*/s Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**